# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 OCT 28 PM 12: 06

CLERK _C. Adams_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| REX A. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 310-073 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Rex A. Morgan ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I.     BACKGROUND

Plaintiff protectively applied for a period of disability, DIB, and SSI on September 30, 2003, alleging a disability onset date of August 25, 2003. Tr. ("R."), p. 55-57. The Social Security Administration denied Plaintiff's applications initially, R. 28-29, 41-44, and on reconsideration, R. 36-39. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on May 12, 2006. R. 479-509. In the May 2006

hearing, the ALJ heard testimony from Plaintiff, who was represented by an attorney, as well as a Vocational Expert ("VE"). R. 481, 501. On January 26, 2007, the ALJ issued an unfavorable decision. R. 295-304.

Plaintiff then requested review from the Appeals Council ("AC"). R. 310-12. The AC vacated the ALJ's January 26th decision and remanded the case with an instruction to clarify for the record the claimant's educational level and whether or not he was literate; provide the claimant with a copy of a medical report from a previous consultative examination; obtain additional evidence of claimant's impairments to complete the record; give further consideration to the claimant's maximum residual functional capacity during the entire relevant time period; and if warranted, obtain supplemental evidence from a VE. R. 313-16. The ALJ received additional evidence and held a second hearing on September 15, 2009, at which he heard additional testimony from Plaintiff, who was represented by the same attorney as in the prior hearing, and a different VE than had testified at the prior hearing. R. 510-47. The ALJ issued a second unfavorable decision on January 13, 2010. R. 12-25. Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful employment since the alleged onset of disability (20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).

2. The claimant has the following severe impairments: scoliosis of the thoracic spine, degenerative joint disease of the lumbosacral spine, and a left shoulder tendon tear (20 C.F.R. §§ 404.1520(c) & 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d) & 416.920(d)).

4. The claimant has the residual functional capacity ("RFC") to perform

2

medium exertional work,[1] except that claimant is limited to work activities that never require reaching/carrying objects overhead with his left upper extremity, or climbing ladders, ropes, or scaffolding. Within an eight-hour workday, claimant can sit, stand, walk, push and/or pull for at least six hours. Claimant can also lift/carry 50 pounds occasionally (up to 1/3 of an eight-hour workday) and 25 pounds frequently (up to 2/3 of an eight-hour workday). Claimant is able climb ramps/stairs, balance, stoop, kneel, and crouch for no more than 2/3 of an eight-hour workday. Additionally, claimant should avoid crawling for any length of time other than to do so briefly in order to track down something that might have fallen to the ground and bounced/rolled underneath an object. Based on this RFC assessment and testimony from the VE, the claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 & 416.965).

5.      Considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as: grocery packer, door assembly, and body assembler. (20 C.F.R. §§ 404.1569, 404.1569a, 416.969 & 416.969a). Thus, the claimant has not been under a disability, as defined in the Social Security Act, from August 25, 2003 through January 13, 2010. (20 C.F.R. §§ 404.1520(g) & 416.920(g)).

R. 18-23.

When the AC denied Plaintiff's request for review of the ALJ's January 13, 2010 decision, R. 6-8, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ failed to properly weigh the opinion of one of his treating physicians, which led to an improper RFC assessment, and (2) the ALJ improperly concluded that certain of his

---

[1]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c) & 416.967(c).

impairments were not severe.[2]  (See generally doc. no. 10 (hereinafter "Pl.'s Br."); doc. no. 12 (hereinafter "Pl.'s Reply Br.").)  The Commissioner maintains that the Commissioner's decision was supported by substantial evidence and should be affirmed.  (See generally doc. no. 11 (hereinafter "Comm'r's Br.").)

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions:  (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145.  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence

---

[2]In addition to the arguments set forth above, Plaintiff argues in his Statement of the Case that "the ALJ failed to comply with the Appeals Council order to clarify for the record [his] educational level and whether or not he is literate." Pl.'s Br., p. 8.  However, Plaintiff does not further address this assertion in either his brief or reply brief and does not indicate how this alleged error would have affected his disability determination.  Accordingly, the Court will not address this issue.  (See doc. no. 9, p. 3 ("The issues before the Court are limited to the issues properly raised in the briefs.").)

is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

Plaintiff contends that the Commissioner has not demonstrated by substantial evidence that he is able to return to substantial gainful activity. Pl.'s Br., pp. 11, 13. In particular, Plaintiff asserts that the ALJ committed error by improperly discounting the opinions of Plaintiff's treating physician, Cherilyn Zellner, M.D., when he evaluated Plaintiff's RFC. Id. at 8. Plaintiff argues that the ALJ failed to properly counter an opinion that Plaintiff requires

a cane to ambulate and gave inadequate reasons for discounting medical evidence demonstrating this need. Id. at 9; Pl.'s Reply Br., p. 2. According to Plaintiff, the ALJ's determination as to Plaintiff's need for a cane is crucial to the RFC determination because a finding that the cane was required would have essentially led to the conclusion that Plaintiff is disabled.[3] Pl.'s Br., p. 11.

The Commissioner maintains that the ALJ's RFC determination properly accounted for the medical evidence in the record and is supported by substantial evidence. Comm'r's Br., p. 5. Furthermore, the Commissioner argues that the opinion that Plaintiff attributes to Dr. Zellner was actually put forth by Samuel Muller, a physician's assistant ("PA") in Dr. Zellner's office. Id. The Commissioner argues that PA Muller is not an acceptable medical source and that his opinion that Plaintiff requires a cane for balance and gait fails to make a showing that the cane is "medically required" under Social Security Ruling (SSR) 96-9p. Id. at 8-9. In his brief, the Commissioner also addresses a separate letter from Dr. Zellner opining that Plaintiff's lumbar disease and chronic obstructive pulmonary disease ("COPD") rendered him "unable to sustain gainful employment;" the Commissioner contends that this opinion is not a medical opinion and, at any rate, is inconsistent with substantial evidence of record. Id. at 5-8.

---

[3] As noted above, the ALJ found that Plaintiff could engage in medium exertional work, with restrictions. The ALJ based this finding on the VE's testimony that a person under certain limitations presented in the ALJ's medium exertion hypothetical could find work that exists in significant numbers in the national economy. R. 24, 539-42. Plaintiff's attorney asked the VE to assume the same limitations as the ALJ's hypothetical, but with the additional restriction of requiring a cane to ambulate; the VE responded that such an individual would essentially not be able to perform medium work. See R. 544-46. According to Plaintiff, this would have limited Plaintiff to light work, but because the VE testified that Plaintiff had no transferable skills, Plaintiff would have been automatically found disabled as of his 55th birthday pursuant to Grid Rule 202.02. Pl.'s Br., p. 11; R. 539.

To begin, it is well-settled that in the Eleventh Circuit a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Finally, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

To find that a hand-held assistive device, such as a cane, is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p.

## 1.    Opinion of PA Samuel Muller

Although Plaintiff argues that Dr. Zellner, his treating physician, gave the opinion that he needed a cane to ambulate, Pl.'s Br., p. 9, the record reflects that this opinion was actually provided by PA Samuel Muller in a letter dated October 2, 2009. R. 470. However, the law is clear that a physician's assistant is not an acceptable medical source that can provide evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a); see also 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (noting specifically that physician's assistants are not included in the list of acceptable medical sources under paragraph (a)). Although the ALJ "may" consider opinions from such other sources to show the severity of a claimant's impairments and how it affects a claimant's ability to work, 20 C.F.R. §§ 404.1513(d), 416.913(d), "those opinions do not demand the same deference as those of a treating physician." Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008); Hammond v. Astrue, No. 3:10-CV-24 (CDL), 2011 WL 2581955, at *2 (M.D. Ga. 2011).

Given the reduced level of deference owed to PA Muller's opinion, the ALJ's failure to give it more consideration was not erroneous. Moreover, PA Muller's opinion failed to address the circumstances for which the cane is needed, as required by SSR 96-9p. PA Muller opined in conclusory fashion that "due to [Plaintiff's] chronic medical conditions, he must use a walking can[e] to help with balance and gait." R. 470. However, this statement does not indicate how frequently the cane is required or explain the kinds of terrain or distances for which it is needed. Moreover, "SSR 96-9p requires more than generalized evidence of a condition that might require a cane. It requires 'medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.'" Staples v. Astrue, 329 F. App'x 189, 192 (10th Cir. 2009) (quoting

SSR 96-9p); see also Reynolds-Buckley v. Astrue, No. 8:10-CV-1668-T-TGW, 2011 WL 2460919, at *5 (M.D. Fla. June 20, 2011) ("Significantly, the record contains no prescription for a cane, or other indication the plaintiff requires an assistive device . . . Since the plaintiff has not provided any [documentation establishing the need for a hand-held assistive device], she has failed to show that the use of a cane is medically required."). PA Muller's conclusory opinion is the type of generalized evidence that is insufficient to demonstrate the circumstances for which Plaintiff requires a cane.

Plaintiff nevertheless asserts that the ALJ erred in discounting PA Muller's opinion because he disregarded other evidence that Plaintiff required a cane to ambulate. Pl.'s Reply Br., p. 2. However, the other evidence that Plaintiff cites is similarly deficient. Plaintiff references numerous observations by PA Muller that Plaintiff used a cane during his examinations. See R. 425, 436, 454, 457, 460. However, mere observations that Plaintiff used a cane in PA Muller's presence do not address the question of whether the cane was "medically required" under SSR 96-9p because such observations do not address the circumstances for which the cane is needed.[4] Plaintiff also points to Dr. Richard J. Clark, Plaintiff's chiropractor, who also stated that Plaintiff requires a cane to ambulate. R. 172. However, a chiropractor, like a physician's assistant, is not an acceptable medical source under 20 C.F.R. §§ 404.1513(a) and 416.913(a). Furthermore, Dr. Clark's conclusion is also not supported by

---

[4]The Court notes that Dr. Zellner's initials appear after PA Muller's signature on some of his examination notes. R. 454, 457, 460. Dr. Zellner would be an acceptable medical source to demonstrate Plaintiff's need for a cane, but as noted above, an observation that an individual uses a hand-held assistive device, without medical documentation of the circumstances for which it is needed, fails to satisfy the terms of SSR 96-9p. For the same reason, Plaintiff's citation to another observation of Plaintiff's cane use by Dr. Basil B. Holoyda, who examined Plaintiff in August of 2006, is similarly unpersuasive. R. 248.

medical documentation showing the circumstances for which the cane is needed. SSR 96-9p.

Plaintiff further argues that the ALJ erred by discrediting PA Muller's opinion with records from Plaintiff's three-day hospitalization for an unrelated illness in September of 2008. Pl.'s Br., p. 10; Pl.'s Reply Br., p. 2; R. 23. Plaintiff argues that this is an insufficient basis for discounting PA Muller's opinion. Pl.'s Br., p. 10; Pl.'s Reply Br., p. 2. In his decision, the ALJ stated that Plaintiff spent three days in the hospital for treatment of pneumonia, but that "there was no mention of musculoskeletal problems or using a cane whatsoever." R. 23, 413. The Court acknowledges that a hospitalization for an unrelated illness would seem to be an unusual basis for discrediting PA Muller's opinion.[5] However, as explained above, PA Muller was not qualified to provide an acceptable medical opinion to establish Plaintiff's need for the cane, and his conclusory opinion was insufficient to establish that Plaintiff's cane was "medically required." Thus, even assuming for the sake of argument the ALJ erred in using the hospital records to discount PA Muller's opinion, as discussed above, Muller's opinion was insufficient to show Plaintiff's need for a cane.

## 2.    Opinion of Dr. Cherilyn Zellner

The Court turns next to a separate opinion in the record, that of Dr. Zellner. In a letter she wrote on April 27, 2007, Dr. Zellner stated that Plaintiff "is unable to sustain gainful employment due to severe lumbar disease that causes chronic low back pain. He also has progressively worsening COPD that hinders his ability to work significantly." R. 368. Because Plaintiff may have intended to reference this letter in his argument that the ALJ erred

---

[5]The Court observes, however, that the hospital records specifically note that a comprehensive review of Plaintiff's systems was "negative for back pain, joint pain, or myalgia." R. 413.

by discounting Dr. Zellner's "opinions regarding disability" in assessing Plaintiff's RFC, Pl.'s Br., p. 9, the Court proceeds to address that document.

There is no dispute that Dr. Zellner is Plaintiff's treating physician, and thus her medical opinions, if supported by relevant evidence and consistent with the record as a whole, are entitled to substantial weight. Hillsman, 804 F.2d at 1181; 20 C.F. R. §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4). However, the Court agrees with the Commissioner that Dr. Zellner's conclusion that Plaintiff is "unable to sustain gainful employment" is an opinion on an administrative issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Accordingly, it is not entitled to controlling weight or special significance. SSR 96-5p.

Furthermore, the ALJ specifically noted that Dr. Zellner's conclusion is not supported by relevant evidence and is inconsistent with other evidence in the record. R. 22. The ALJ noted that Dr. Zellner had performed no recent x-rays, examinations, or pulmonary function tests to support her conclusion that Plaintiff's lumbar disease and COPD were such that they rendered Plaintiff unable to sustain gainful employment. R. 22-23. The ALJ also noted evidence of a negative neurological exam and normal findings on Plaintiff's back and extremities at a cardiac exam by Dr. Manuel Vega in August of 2009. R. 22, 420. He also cited a report conducted by the neurologic consultative examiner, Dr. Holoyda, that found no evidence of spinal cord or nerve root impingement. R. 22, 248. Inconsistency with the record as a whole and lack of evidentiary support are both proper bases for discounting a treating physician's opinion. Lewis, 125 F.3d at 1440; see also 20 C.F.R. §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4). The Court therefore agrees with the ALJ's conclusion that Dr. Zellner's statement of disability had no evidentiary value, and accordingly it was not error for the ALJ

11

to disregard this opinion in conducting Plaintiff's RFC assessment.

## B.     Failure to Find Plaintiff's Mental Impairments to be Severe

Plaintiff's second claim is that the ALJ improperly rejected his depression and anxiety as severe mental impairments. Pl.'s Br., p. 12, Pl.'s Reply Br., p. 2. To begin, it will be helpful to explain what constitutes a "severe" impairment under the Social Security Act. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that his mental impairments significantly affect his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic

> work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

Title 20, Code of Federal Regulations, Sections 404.1520a and 416.920a set forth a "special technique" to be followed in the analysis of mental impairments. The ALJ must first evaluate the degree of functional limitation resulting from the impairment. If he finds the

13

impairment severe, he then must determine whether the impairment meets or is equivalent in severity to a listed mental disorder. If he finds the impairment severe, but the impairment is not a listed disorder, then the ALJ must evaluate the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a, 416.920a.

In evaluating the severity or degree of functional limitation resulting from the mental impairment, the ALJ considers four functional categories and rates the degree of functional limitation in each category.[6] Those categories include activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[7] Id. §§ 404.1520a(c)(3), 416.920a(c)(3). In rating the first three functional categories, an ALJ classifies the degree of limitation as "none," "mild," "moderate," "marked," or "extreme." In rating the decompensation category, the ALJ classifies the limitation as "none," "one or two," "three," and "four or more." Id. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ finds the degree of limitation in the first three categories to be "none" or "mild" and the degree of limitation in the fourth category to be "none," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on [the] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

With regard to affective disorders, such as depression, a plaintiff may demonstrate that his impairment is severe if he shows that his mental impairment resulted in at least two of the

---

[6]These four functional categories are known as the "paragraph B" criteria. R. 20.

[7]*Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace." 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(4).

following: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation,[8] each of extended duration.[9] 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04. With these basic principles in mind, the Court turns to Plaintiff's argument.

Plaintiff contends that the ALJ erred in finding that his anxiety and depression were non-severe mental impairments, and thus failed to include any resulting limitations from those impairments in the RFC determination.[10] Pl.'s Br., pp. 12-13, Pl.'s Reply Br., pp. 2-3. The Commissioner argues that it is unimportant whether the ALJ classifies particular impairments as severe at step two so long as he finds at least one impairment to be sufficiently severe to proceed to the latter steps of the sequential process. Comm'r's Br., pp. 11-12. The Commissioner further argues that, in any event, the ALJ's determination that Plaintiff's mental impairments were no more than mild in nature is supported by substantial evidence in the record. Id. at 12-13.

Because an ALJ's step two determination as to the severity of particular impairments has ramifications for the analyses to be undertaken in the subsequent steps, the Court does not

[8]Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(4).

[9]This standard also applies for anxiety related disorders. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.06.

[10]Plaintiff's brief focuses on his alleged "major depressive disorder, Pl.'s Br., pp. 12-13, although he raises both his anxiety and depression in his reply brief, Pl.'s Reply Br., pp. 2-3. The Court proceeds to address both alleged impairments, but for the reasons discussed below, concludes that Plaintiff has not met his burden to show that either of these mental impairments is severe.

endorse the characterization of step two set forth in the Commissioner's brief.[11] O'Neal v. Astrue, CV 310-055, doc. no. 17 (S.D. Ga. Aug. 8, 2011), *adopted as opinion of District Court*, doc. no. 20 (Bowen, J.). Thus, there remains the question of whether the ALJ erred in his conclusion that Plaintiff's mental impairments were not severe.

1. **The ALJ's Conclusion that Plaintiff's Mental Impairments Were Not Severe is Supported by Substantial Evidence**

In his decision, the ALJ addressed Plaintiff's complaints of anxiety and depression. R. 19-20. He found that the psychological consultative examiner, Dr. John C. Whitley, III, and the State Agency psychologist found Plaintiff's mental impairments to be non-severe.[12, 13] R. 19, 204-05, 216-28. Although he acknowledged that more recent records from 2009 indicated that Plaintiff had suffered from bouts of anxiety and depression, R. 425, 435, 471, the ALJ also noted that Plaintiff had reported improvement in his symptoms with medication, that he had denied any suicidal plans, and that he was treated as an outpatient because his symptoms were not severe enough to require hospitalization. R. 19, 425, 471, 473. The ALJ further noted that Plaintiff had been assessed with a global assessment functioning (GAF) rating of 55-65,

---

[11]For example, severe impairments, unlike non-severe impairments, must typically be included in a hypothetical question asked to the VE, which can affect the resolution of later steps in the sequential process. See, e.g., Loveless v. Massanari, 136 F. Supp.2d 1245, 1250-51 (M.D. Ala. 2001). And it is conceivable that a plaintiff with two or more severe impairments would be able to return to work despite all but one of those impairments. In such a case, failure to find that single, debilitating impairment to be severe would be erroneous. Of course, an ALJ must additionally "consider not only the disabling effect of each of the [plaintiff's] ailments individually, but also the combined effect of all of the [plaintiff's] impairments." Wiggins, 679 F.2d at 1392.

[12]As explained in greater detail below, Plaintiff disputes that Dr. Whitley concluded that Plaintiff's mental impairments were non-severe. Pl.'s Reply Br., p. 3.

[13]Dr. Whitley and the State Agency psychologist examined Plaintiff in July of 2004 and August of 2004, respectively. R. 203, 216.

"indicating no more than mild mental functional limitations." R. 20, 205, 473.

After considering the evidence in the record in the context of the four paragraph B criteria, the ALJ concluded that Plaintiff's anxiety and depression were non-severe because he had no more than "mild limitation of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation." R. 20; see also 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Plaintiff disputes that Dr. Whitley indeed concluded that Plaintiff's anxiety and depression were non-severe. Pl.'s Reply Br., p. 3. In support, he points to Dr. Whitley's opinion that Plaintiff's ability to interact with others in a predictable manner is moderately impacted by psychological issues and pain; that Plaintiff was limited to understanding and following simple instructions; that Plaintiff's ability to cope with stress, change, and demand is limited by depression and physical pain; and that Plaintiff's ability to sustain effort and focus is guarded. R. 205. According to Plaintiff, these limitations alone are enough to satisfy the de minimis standard of showing his mental impairments to be severe. Pl.'s Br., p. 12; Pl.'s Reply Br., p. 3. The Court does not agree.

Although Plaintiff contends that Dr. Whitley limited him to simple work, which he argues would have significantly eroded the occupational base in Plaintiff's RFC determination, Pl.'s Br., p. 13, Pl.'s Reply Br., p. 3, Dr. Whitley did not limit Plaintiff to simple work, but simply stated that Plaintiff "appears able to understand and follow simple instructions." Comm'r's Br., p. 13; R. 205. Furthermore, as the Commissioner points out, while Dr. Whitley stated that Plaintiff's ability to interact with others, cope with stress, and sustain effort and focus was impaired to some degree, he nevertheless concluded that Plaintiff's ability to engage

in work was not precluded. Comm'r's Br., p. 13; R. 19, 205. Specifically, Dr. Whitley concluded that Plaintiff was able to organize his daily activities, adhere to a work schedule, demonstrate reliability, use appropriate judgment, and manage his finances. Comm'r's Br., p. 13; R. 19, 205.

The Court is mindful that Plaintiff's burden to show the severity of a particular impairment is not a heavy one. See McDaniel, 800 F.2d at 1031. However, Plaintiff nevertheless bears the burden of showing that his mental impairments significantly affect his ability to perform basic work activities. Id. As he presented no evidence of "repeated episodes of decompensation, each of extended duration," Plaintiff needed to show that he experienced marked limitations in at least two of the remaining paragraph B criteria in order to demonstrate that his mental impairments were severe. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04. Thus, even if the ALJ had agreed with Dr. Whitley's conclusion that Plaintiff's "ability to interact with others in a predictable manner is **moderately** impacted," Pl.'s Reply Br., p. 3; R. 205, a showing of moderate limitation in functioning is insufficient to satisfy paragraph B's requirement of demonstrating a *marked* limitation.

Furthermore, Dr. Whitley's opinions that Plaintiff's "ability to cope with stress, change[,] and demands is limited," and that his "ability to sustain effort and focus for the completion of assigned tasks is guarded," R. 205, likewise do not suggest that Plaintiff's limitations in functioning were so significant as to be *marked*. In short, Plaintiff fails to show he has marked limitations in one, much less two, of the paragraph B criteria. Accordingly, the ALJ's finding that Plaintiff's mental impairments were non-severe is supported by substantial evidence in the record. Thus, the Court finds that this issue provides no basis for remand.

### C. Questions Posed to VE at Hearing

Included in his argument that the ALJ's decision is not supported by substantial evidence is Plaintiff's contention that the ALJ improperly used the VE to determine that he could perform work that exists in significant numbers in the national economy. In particular, Plaintiff argues that the ALJ erred by failing to include limitations based on his anxiety and depression in hypothetical questions posed to the VE. Pl.'s Br., p. 13; Pl.'s Reply Br., p. 3. Furthermore, Plaintiff raises the issue of whether the ALJ properly used the VE's testimony with regard to his prior argument about the ALJ's decision to discount the opinion of Plaintiff's treating physician. More specifically, if the ALJ had credited the opinion that Plaintiff required a cane to ambulate, this would essentially have required a finding that Plaintiff is disabled. Pl.'s Br., p. 11.

At step four of the sequential evaluation process, the ALJ determined that Plaintiff was unable to perform his past relevant work but had the residual functional capacity to perform medium work with restrictions, as set forth in detail herein at page 3. R. 23. With regard to a step five determination, the Commissioner has the burden has to show the existence of other types of substantial gainful employment that Plaintiff could perform given his age, education, previous work experience, and residual functional capacity. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). In this regard, the ALJ properly consulted a VE in conjunction with the Medical-Vocational Guidelines.

Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. See McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir.

1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations, including that a claimant "often" has deficiencies in concentration, persistence or pace, is grounds for remanding case for further proceedings).

Here, with regard to his alleged mental impairments, Plaintiff stresses that a limitation to simple work alone would have significantly eroded the occupational base if included in the ALJ's hypothetical to the VE. Pl.'s Br., p. 13; Pl.'s Reply Br., p. 3. However, as noted above, Dr. Whitley did not limit Plaintiff to simple work, but merely observed that Plaintiff appeared able to understand and follow simple instructions. R. 205. Moreover, the ALJ reasonably concluded that Plaintiff's mental impairments were not severe. See supra Part III.B. Accordingly, the ALJ was not required to include Plaintiff's mental impairments in his hypothetical questions to the VE. Loveless, 136 F. Supp.2d at 1250-51 ("[T]he hypothetical question posed by the ALJ may omit non-severe impairments."). Moreover, the Eleventh Circuit has held that an ALJ is not required to include mental impairments to the VE where those impairments are controlled or alleviated by medication. See McSwain, 814 F.2d at 620 n.1 (explaining that ALJ did not err in failing to include mental impairments in hypothetical restrictions where plaintiff had testified that symptoms were substantially controlled by medication).

Likewise, the ALJ reasonably concluded that Plaintiff's alleged need for a cane was not supported by substantial evidence. See supra Part III.A. Thus, the ALJ was not required to consider the VE's statements that an individual requiring a cane to ambulate would

essentially be unable to perform medium work.[14]  See Loveless, 136 F. Supp.2d at 1250-51.

In sum, the ALJ's was not required to include any of Plaintiff's non-severe characteristics in his hypothetical questions to the VE.  Nor was he required to consider the VE's testimony regarding a hypothetical involving use of a cane, since Plaintiff's need for a cane was not supported by substantial evidence in the record.  Accordingly, the ALJ's step five determination as to Plaintiff's ability to perform other work is supported by substantial evidence and should not be disturbed.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 28th day of October, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[14]As explained above, supra note 3, a finding that Plaintiff was unable to engage in medium work would have rendered Plaintiff automatically disabled under Grid Rule 202.02.