ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JAN 11 P 3: 26

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| REX A. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 310-073 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

After a careful, *de novo* review of the file, the Court concurs with the Magistrate Judge's Report and Recommendation ("R&R"), to which objections have been filed (doc. no. 17). The Magistrate Judge recommends that the final decision of the Commissioner be affirmed because it was supported by substantial evidence. (Doc. no. 15.)

In his objections, Plaintiff asserts that, contrary to the Magistrate Judge's determination, the Administrative Law Judge ("ALJ"): (1) failed to properly weigh the opinion of one of his treating physicians that Plaintiff requires a cane to walk and is disabled; and (2) improperly concluded that Plaintiff's mental impairments were not severe. (Doc. no. 17, pp. 3-6.) Moreover, Plaintiff argues, these errors led to an improper determination that he can perform work that exists in substantial numbers in the national economy because the ALJ improperly used the Vocational Expert ("VE"). (See generally id.) The Court will address each of these objections in turn.

## I.   DISCUSSION

### A.   Weight of Opinion Evidence

#### 1.   Opinion of Samuel Muller, Physician's Assistant

In the R&R, the Magistrate Judge observed that although Plaintiff had attributed an opinion that he requires a cane to walk to his treating physician, Dr. Cherilyn Zellner, the record reflects that this opinion was instead proffered by Samuel Muller, a physician's assistant ("PA Muller").  (Doc. no. 15, p. 8 (citing R. 470).)  As the Magistrate Judge correctly noted, a physician's assistant is not an acceptable medical source that can provide evidence to establish an impairment, 20 C.F.R. §§ 404.1513(a), 416.913(a), and thus PA Muller's opinion was not entitled to the same deference as would be owed to that of a treating physician.  (Doc. no. 15, p. 8.)

In his objections, Plaintiff argues that whether PA Muller was an "'acceptable medical source' is only relevant to establish that [he] has a medically determinable impairment."  (Doc. no. 17, p. 3 (citing SSR 06-3p).)  Yet contrary to Plaintiff's assertion, SSR 06-3p provides:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons.  First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment.  See 20 CFR 404.1513(a) and 416.913(a).  Second, only "acceptable medical sources" can give us medical opinions.  See 20 CFR 404.1527(a)(2) and 416.927(a)(2).  Third, only "acceptable medical sources" can be considered treating sources as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight.  See 20 CFR 404.1527(d) and 416.927(d).

SSR 06-3p.  Accordingly, because PA Muller was not an "acceptable medical source," he therefore was not qualified to provide a medical opinion that Plaintiff requires a cane to walk, and his opinion was not entitled to controlling weight as Plaintiff argues.  Moreover, although

2

the R&R noted that the ALJ's decision to discount PA Muller's opinion with evidence from a three-day hospital stay was "unusual," (doc. no. 15, p. 10), the R&R nevertheless observed, as did the ALJ, that the hospital treatment notes reflected that a comprehensive review of Plaintiff's systems during his stay revealed no joint, back, or muscle pain. R. 23, 413. This further undermined PA Muller's opinion, and the R&R properly concluded that the ALJ's decision to discredit this opinion was supported by substantial evidence. (Doc. no. 15, pp. 8, 10.)

Plaintiff further objects that the R&R provided an improper post-hoc rationale to support the ALJ's decision by citing to SSR 96-9p, which addresses when a hand-held assistive device such as a cane is "medically required."[1] (Doc. no. 17, p. 3.) While Plaintiff correctly notes that the ALJ did not reference this ruling in his decision, the Court rejects Plaintiff's argument that the Magistrate Judge erred in consulting this Ruling in the R&R. On the contrary, once the Magistrate Judge sorted out that it was PA Muller – and not Dr. Zellner – who gave the opinion that Plaintiff requires a cane to walk, there was no harm in consulting this Ruling for guidance on when a cane is medically required. Indeed, this Ruling emphasizes the need for a medical opinion to establish the need for a cane, but as noted above, PA Muller was not qualified to offer such an opinion. In any event, the R&R had already correctly concluded that the ALJ was within his discretion to give PA Muller's non-medical opinion little consideration in his decision, notwithstanding the R&R's analysis of SSR 96-9p. (Doc. no. 15, p. 8.) Accordingly, the Court agrees that the ALJ's decision to discredit PA Muller's

---

[1] SSR 96-9p provides, in relevant part: "[T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."

3

opinion is supported by substantial evidence.

### 2. Opinion of Dr. Cherilyn Zellner

Somewhat confusingly, Plaintiff continues to attribute PA Muller's opinion to Dr. Zellner in his objections, and further asserts that the ALJ erred in discounting that opinion – as well as a separate opinion actually provided by Dr. Zellner – with evidence from the three-day hospital visit. (Doc. no. 17, p. 4.) Yet the Magistrate Judge, in an abundance of caution, also addressed Dr. Zellner's opinion that Plaintiff was "unable to sustain gainful employment" due to severe lumbar disease and progressively worsening chronic obstructive pulmonary disease ("COPD"). (Doc. no. 15, pp.10-11 (citing R. 368).)

As the Magistrate Judge correctly pointed out, an opinion that Plaintiff is "disabled" is one reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Accordingly, the R&R properly concluded that Dr. Zellner's opinion that Plaintiff was "disabled" was not entitled to controlling weight or special significance. SSR 96-5p. Moreover, the Magistrate Judge explained that the ALJ's decision properly discredited Dr. Zellner's opinion as to the severity of his lumbar disease and COPD because: (1) Dr. Zellner had not performed any recent tests to support her conclusion as to the severity of these impairments; and (2) other medical neurological and cardiac reports showed normal findings and showed no evidence of spinal cord or root impingement. (Doc. no. 15, p. 11 (citing R. 22-23, 248, 420).) Lack of evidentiary support and inconsistency with the record as a whole are both proper bases for discrediting a treating physician's opinion, as the Magistrate Judge correctly stated. (Id. (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).) In sum, the Magistrate Judge properly determined that the ALJ's evaluation of the opinion

4

evidence was supported by substantial evidence.

**B.     Severity of Plaintiff's Mental Impairments**

Plaintiff next objects that the R&R incorrectly concluded that the ALJ's decision that

Plaintiff's mental impairments were non-severe was supported by the record. (Doc. no. 17,

p. 4.) Specifically, Plaintiff argues that the R&R improperly analyzed his mental health

impairments under Step 3 of the five-step sequential process required by 20 C.F.R. §§

404.1520 and 416.920, rather than under Step 2, leading to the erroneous conclusion that the

ALJ's decision was supported by substantial evidence. (Id.) Although the Magistrate Judge

utilized a Step 3 listings analysis, for the reasons set forth below, the Court finds that even

under a Step 2 severity analysis, the ALJ's decision is due to be affirmed.

**1.     Legal Standard**

As the R&R correctly set out, under the Social Security Act, a severe impairment is one

which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§

404.1521(a), 416.921(a) ("Non-severe impairment(s). An impairment or combination of

impairments is not severe if it does not significantly limit your physical or mental ability to do

basic work activities."). Basic work activities involve "the abilities and aptitudes necessary

to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting,
> pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual
> work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that his mental impairments significantly affect his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's

6

effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

In the R&R, the Magistrate Judge correctly identified the "special technique" to be followed in the analysis of mental impairments under 20 C.F.R. §§ 404.1520a and 416.920a. However, the R&R also went into the standards used to determine disability on the basis of the listings of impairments set out in 20 C.F.R. Part 404, Subpart P, App. 1, which apply under Step 3 of the five-step sequential process. Because it is unnecessary to reach Step 3 of the sequential process, as explained below, the Court will clarify the "special technique" analysis for assessing mental impairments under Step 2.

Under the "special technique," the ALJ must first evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. §§ 404.1520a(b), 416.920a(b). Next, the ALJ must rate the degree of functional limitation resulting from the mental impairment by considering four functional categories and rating the degree of functional limitation in each category.[2] Id. §§ 404.1520a(c), 416.920a(c). Those categories include activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[3] Id. §§ 404.1520a(c)(3), 416.920a(c)(3). In rating the first three functional categories, an ALJ classifies the degree of limitation as "none," "mild," "moderate," "marked,"

---

[2]These four functional categories are known as the "paragraph B" criteria. R. 20.

[3]"*Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace." 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(4).

or "extreme." In rating the decompensation category, the ALJ classifies the limitation as "none," "one or two," "three," and "four or more." Id. §§ 404.1520a(c)(4), 416.920a(c)(4). "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." Id.

After rating the degree of functional limitation stemming from a mental impairment, the ALJ must then determine whether that impairment is severe. Id. §§ 404.1520a(d), 416.920a(d). If the ALJ finds the degree of limitation in the first three categories to be "none" or "mild" and the degree of limitation in the fourth category to be "none," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on [the] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1). Only if the ALJ finds that the mental impairment is severe will he then be required to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2). As discussed below, the ALJ's determination that Plaintiff's mental impairments were non-severe is supported by the record; it is thus unnecessary to analyze whether Plaintiff's mental impairments met or medically equaled a listed mental disorder.

### 2. The ALJ's Severity Determination is Supported by Substantial Evidence

In determining that Plaintiff's mental impairments were non-severe, the ALJ noted: (1) the psychological consultative examiner and State Agency psychologist found Plaintiff's mental health complaints to be non-severe, see R. 205, 216; (2) Plaintiff's most recent mental health records from 2009 indicated that his mental impairments were "no more than 'mild' in nature and [were] resolving with medications," see R. 471, 473; (3) Plaintiff's treating

8

psychologist determined that Plaintiff could be treated as an outpatient for his symptoms because they were not severe enough to require hospitalization, see R. 471, 473; and (4) Plaintiff "was assessed with a global assessment functioning (GAF) rating of 55-65, indicating no more than mild mental functional limitations," see R.471, 473. R. 19-20. The ALJ found that Plaintiff had demonstrated the existence of medically determinable mental impairments, but concluded that because they "cause[d] no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation," they were therefore non-severe. R. 20 (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

In support of his argument that the ALJ's determination is not supported by substantial evidence, Plaintiff relies almost exclusively upon a mental evaluation performed in July of 2004 by Dr. John C. Whitley, III, the psychological consultative examiner. (Doc. no. 17, p. 5.) In particular, Plaintiff contests the ALJ's determination that Dr. Whitley found Plaintiff's mental impairments of anxiety and depression to be non-severe. (Id.) For support, Plaintiff points to Dr. Whitley's conclusion that his "ability to interact with others in a predictable manner is **moderately** impacted by psychological issues and pain; . . . [h]is ability to cope with stress, change and demands is limited by depression and physical pain;" and "his ability to sustain effort and focus is guarded." (Id. at 5-6 (citing R. 205) (emphasis added).) Plaintiff further argues that Dr. Whitley limited him to understanding and following simple instructions, which he argues "essentially limits [him] to unskilled work." (Id. at 5.) Plaintiff asserts that by dismissing his mental impairments as non-severe, "the ALJ's decision essentially ignored the opinion of Dr. Whitley, leading to an improper RFC assessment. (Id. at 6.)

9

As the R&R correctly noted, however, Dr. Whitley did not go so far as to limit Plaintiff to simple work. Rather, he opined that Plaintiff "appears able to understand and follow simple instructions." (Doc. no. 15, p. 17 (citing Comm'r's Br., p. 13; R. 205).) Similarly, the R&R further noted that "while Dr. Whitley stated that Plaintiff's ability to interact with others, cope with stress, and sustain effort and focus was impaired to some degree, he nevertheless concluded that Plaintiff's ability to engage in work was not precluded." (Id. (citing Comm'r's Br., p. 13; R. 19, 205).) Indeed, Dr. Whitley opined that Plaintiff was capable of organizing his daily activities, adhering to a work schedule, demonstrating reliability, using appropriate judgment, and managing his finances. (Id.) In short, although the R&R later relied on a Step 3 analysis rather than a Step 2 analysis, it correctly concluded that Dr. Whitley's opinion as to Plaintiff's mental impairments is not as limiting as Plaintiff contends.

Furthermore, as noted above, the ALJ examined numerous pieces of evidence from the record before finding Plaintiff's mental impairments to be non-severe, including evidence more recent than Dr. Whitley's assessment.[4] In particular, the ALJ noted that the State Agency psychologist concluded in August of 2004 that Plaintiff's mental impairments were not severe, R. 19, 216, and Plaintiff's most recent medical records from 2009 indicated that his anxiety and depression were "no more than 'mild' in nature" and were improved with medication. R. 19, 471, 473. Given this evidence, it was reasonable for the ALJ to conclude that Plaintiff's symptoms of mild, treatable anxiety and depression are not severe impairments. See Smith v.

---

[4] The Court also notes that Plaintiff did not allege depression or anxiety as disabling impairments on his 2003 application for benefits. R. 110. As the Commissioner points out (Comm'r's Br., p. 12), this also undermines Plaintiff's claim that these mental impairments were disabling. See Street v. Barnhart, 133 F. App'x 621, 630-31 (11th Cir. 2005) (per curiam) (finding that plaintiff's failure to include mental impairment in application for benefits was evidence that impairment was not disabling).

Soc. Sec. Admin., 272 F. App'x 789, 799 (11th Cir. 2008) (*per curiam*) (finding that substantial evidence supported finding that plaintiff's anxiety and depression were non-severe where plaintiff's symptoms were controlled by medication).

Moreover, the ALJ did not "ignore" Dr. Whitley's opinion, as Plaintiff suggests. On the contrary, the ALJ took this opinion into consideration, along with other evidence in the record, before concluding that Plaintiff suffers the following functional limitations under the paragraph B criteria: "He has mild limitation of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration."  R. 20. However, because the ALJ found that Plaintiff's mental impairments caused no more than mild limitations, he concluded that these impairments were non-severe.  Id.

In short, although the ALJ found evidence of some impairment associated with Plaintiff's anxiety and depression, the ALJ's conclusion that these impairments were non-severe is supported by substantial evidence.  See Raduc v. Commissioner of Soc. Sec., 380 F. App'x 896, 897-98 (11th Cir. 2010) ("That [plaintiff] had some impairment from anxiety and depression '[did] not reveal the extent to which [it limited] her ability to work or undermine the ALJ's determination' that her mental health was not a severe impairment.") (*per curiam*) (quoting Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (*per curiam*)); Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (explaining that mild to moderate depression is not a "sufficiently severe non-exertional limitation significantly limiting a claimant's ability to work . . . .").  Because there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairments were non-severe, the Court must uphold the Commissioner's

decision.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

### C.       ALJ's Use of Vocational Expert

Plaintiff's final objection is based on his prior two objections.  Although Plaintiff did not explicitly make the argument in his objections, it is clear from his briefing that Plaintiff objects to the R&R's conclusion that the ALJ properly used the VE to determine that Plaintiff could perform work that exists in significant numbers in the national economy.  (See Pl.'s Br., p. 13; Pl.'s Reply Br., p. 3; see generally doc. no. 17.)  Specifically, Plaintiff argues that the ALJ erred by failing to include limitations based on his mental impairments in hypothetical questions posed to the VE.  (Pl.'s Br., p. 13; Pl.'s Reply Br., p. 3.)  Furthermore, Plaintiff argues, had the ALJ properly credited the opinion that Plaintiff required a cane to ambulate, this would essentially have required a finding that Plaintiff is disabled according to the VE's testimony.  (Pl.'s Br., p. 11.)

Because the Court rejects Plaintiff's arguments above regarding the proper weight of the opinion evidence and the severity determination as to Plaintiff's mental impairments, the Court likewise rejects Plaintiff's related argument that the ALJ improperly used the VE.  As the Magistrate Judge correctly explained, the ALJ was not required to include Plaintiff's non-severe mental impairments in his hypothetical questions to the VE.  Loveless v. Massanari, 136 F. Supp.2d 1245, 1250-51 (M.D. Ala. 2001) ("[T]he hypothetical question posed by the ALJ may omit non-severe impairments.").  Nor was the ALJ required to consider the VE's testimony regarding a hypothetical involving use of a cane, since Plaintiff's need for a cane was not supported by substantial evidence in the record.  See id.  Thus, the ALJ's use of the VE in assessing whether Plaintiff could return to work was proper and provides no basis for remand.

In sum, the ALJ's decision is supported by substantial evidence and should not be disturbed.

## II.    CONCLUSION

Plaintiff's objections are therefore **OVERRULED**.  Accordingly, the Report and Recommendation of the Magistrate Judge is **ADOPTED** as modified herein as the opinion of the Court.  Therefore the Commissioner's final decision is **AFFIRMED**, this civil action is **CLOSED**, and a final judgment shall be **ENTERED** in favor of the Commissioner.

SO ORDERED this 10 day of _____ January _____, 2012, at Augusta, Georgia.

_____
UNITED STATES DISTRICT JUDGE